UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HAROLD E. CAMPBELL, JR.,

                    Plaintiff,

v.                                  1:05-CV-1501
                                  (GTS/GJD)

CONSOLIDATED RAIL CORP.; and
CSX TRANSPORTATION, INC.,

                    Defendants.
_____

APPEARANCES:                              OF COUNSEL:

HANNON & PALERMO, P.C.             DON P. PALERMO, ESQ.
  Counsel for Plaintiff                GREGORY JOHN HANNON, ESQ.
150 South Independence Mall West
Philadelphia, PA  19106

FLINT & GRANICH                    JOSEPH A. GRANICH, ESQ.
  Counsel for Plaintiff
80 Wolf Road, 6th Floor
Albany, NY  12205

HODGSON RUSS LLP              NOREEN D. GRIMMICK, ESQ.
  Counsel for Defendants           LAWRENCE R. BAILEY, JR., ESQ.
60 East 42nd Street, 37th Floor
New York, NY  10165

BURNS, WHITE & HICKTON, LLC     T.H. LYDA, ESQ.
  Counsel for Defendants           ANDREW M. SMALLEY, ESQ.
106 Isabella Street
Four Northshore Center
Pittsburgh, PA  15212

GLENN T. SUDDABY, United States District Judge

<u>**DECISION and ORDER**</u>

**I.     INTRODUCTION**

Plaintiff commenced this action on December 28, 2004, pursuant to the Federal

Employer's Liability Act ("FELA"), 45 U.S.C. § 51, *et seq*.  (*See* Dkt. No. 1, ¶ 4 [Plf.'s Compl.].)

Plaintiff was employed by Defendant railroad companies from September 1976 to June 2005.

Plaintiff alleges that while working within the scope of his employment as a welder/foreman, he

was exposed to "excessive and harmful cumulative trauma to his hands."  (*See* Dkt. No. 24, ¶ 8

[Plf.'s Am. Compl.].)  Plaintiff alleges that these "injuries were caused in whole or in part by the

negligence, carelessness and recklessness of the Defendants and their agents, servants, workmen

and/or employees, acting within the scope of their employment."  (*Id*. at ¶ 12.)

At the Final Pretrial Conference in this action on December 29, 2008, and in a written

Order filed on December 30, 2008, the Court decided, or partially decided, several of the

motions *in limine* pending before the Court.  (Dkt. No. 98.)  This Decision and Order decides

three of the motions *in limine* that remain in this action, each of which was filed by Defendants.

The first of these three motions *in limine* requests that the Court issue an Order that

precludes Plaintiff from introducing at trial any evidence regarding the Occupational Safety and

Health Act ("OSHA") standards or alleged violations of OSHA standards.  (Dkt. No. 71.)  The

second of these three motions *in limine* (called Defendants' "Omnibus Motion *in Limine*")

requests, *inter alia*, that the Court issue an Order that precludes Plaintiff from introducing at trial

any discussion, argument, testimony and/or evidence regarding (a) any purported Congressional

intent behind the enactment of FELA, (b) a comparison between FELA and any workers'

compensation acts, the fact that Plaintiff was not covered under workers' compensation benefits,

or that Plaintiff's sole remedy is under FELA, (c) any other claims or lawsuits against Defendants, or (d) whether Defendants could have employed a safer method of maintaining Plaintiff's workplace.  (Dkt. No. 73, Part 2, at 1-4, 10-13.)  The third of these three motions *in limine* requests that the Court issues an Order that precludes Plaintiff from introducing evidence that Defendants lacked an ergonomic program and/or medical surveillance program.  (Dkt. No. 75.)

For the reasons set out below, the Court grants in part, and denies in part, these three motions *in limine*.

## II.   DISCUSSION

### A.   Defendants' Motion to Exclude Evidence Regarding OSHA Standards or Alleged Violations of OSHA Standards

In support of their first motion, Defendants advance a two-pronged argument: (1) any discussion of OSHA regulations should be precluded as irrelevant under Fed. R. Evid. 401, because the Federal Railroad Administration ("FRA") guidelines preempt OSHA regulations; and (2) even if the Court finds that the FRA guidelines do not preempt OSHA regulations, evidence of OSHA regulations is inadmissible under Fed. R. Evid. 403, because the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.  (Dkt. No. 71.)

#### 1.   Relevance

Under the Federal Rules of Evidence, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401. With respect to Defendants' argument that OSHA is irrelevant (in this FELA action) because the

FRA guidelines preempt OSHA regulations, Defendants are certainly correct that FRA guidelines preempt some OSHA regulations.

Specifically, in 1970, Congress enacted the Federal Railroad Safety Act ("FRSA") in order to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101, *et seq.* The FRSA empowers the United States Transportation Secretary, acting through the FRA, to carry out the purpose of the FRSA by (1) "prescrib[ing] regulations and issu[ing] orders for every area of railroad safety," 49 U.S.C. § 20103(a), and (2) "carry[ing] out, as necessary, research, development, testing, evaluation, and training for every area of railroad safety," 49 U.S.C. § 20108(a). Indeed, OSHA recognizes that some of its regulations might be preempted by standards or regulations established by other federal agencies. *See* 29 U.S.C. § 653(b)(1) ("Nothing in this [Act] shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.").

Having said that, the Court hastens to add that FRA guidelines preempt only *some* OSHA regulations. The FRA has stated that it will assume exclusive authority for making regulations only in areas involving its special competence over "the safety of railroad operations," which it defines as "conditions and procedures necessary to achieve the safe movement of equipment over the rails." 43 Fed. Reg. 10,585 (March 14, 1978).[1] For example, the FRA has stated that

---

[1]       Federal courts have rather consistently interpreted FRA standards as not completely preempting OSHA regulations. *See, e.g.*, *Southern Ry. v. OSHRC*, 539 F.2d 335, 338 (4th Cir. 1976) (squarely rejecting the "industry-wide" exception theory); *S. Pac. Transp. Co. v. Usery*, 539 F.2d 386, 389 (5th Cir. 1976) ("[OSHA] decree[s] the existence of overlapping authority to regulate railroad safety, with displacement of OSHA coverage by the FRA

such conditions and procedures include ensuring that workers "laying or repairing welded rail observe certain procedures impacting on the final condition of the track," and that "proper precautions [are taken] to assure that trackmen are not struck by trains." *Id.* However, the FRA has expressly stated that "most hazards related to the handling of welding apparatus are non-operational concerns," and thus remain subject to OSHA regulations. *Id*; *see also Ass'n of Am. R.R. v. Dept. of Transp.*, 38 F.3d 582, 588 (D.C. Cir. 1994). It bears noting that the Court is unaware of any instance in which the FRA has ever implemented a relevant regulation specifically governing welders. *See* 29 C.F.R. § 1910.252. As a result, the Court concludes that the FRA has not preempted OSHA with regard to the use of welding equipment.

That conclusion does not end the Court's inquiry into whether OSHA is relevant to this FELA action because that relevance must be specifically identified. Based on a careful review of the applicable case law, it appears that, generally, where federal courts have found that the FRA has not preempted OSHA, those courts have found OSHA regulations to be admissible as some evidence of the standard of care in FELA cases. *See*, *e.g.*, *Robertson v. Burlington N. R.R.*, 32 F.3d 408, 409-11 (9th Cir. 1994) (affirming district court ruling that admitted OHSA's noise standards as some evidence of the defendant's duty of care) [citations omitted]; *Ries v. National R.R. Passenger Corp.*, 960 F.2d 1156, 1165 (3d Cir. 1992) ("[T]he violation of the OSHA regulation was properly admissible as [some] evidence of [the defendant's] negligence . . . .");

---

dependent on unilateral action by the FRA [to exercise its authority]."), *cert. denied*, 434 U.S. 874 (1977); *Ass'n of Am. R.R. v. Dept. of Transp.*, 38 F.3d 582, 588 (D.C. Cir. 1994) ("[T]he FRA [has never] interpreted its 1978 Policy Statement as a broad ouster of OSHA jurisdiction."); *Manes v. Metro-North Commuter R.R.*, 801 F. Supp 954, 963 (D. Conn. 1992) ("OSHA's negative preemption provision, requires an actual, concrete assertion of regulatory authority as opposed to mere possession of authority." [citations and internal quotations omitted]).

*Albrecht v. Baltimore & O. R.R.*, 808 F.2d 329, 333 (4th Cir. 1987) ("[A] better form . . . of the [jury] instruction would be to call to the attention of the jury the particular part of the applicable [OSHA] regulation and instruct it that if the jury believed from the evidence that the regulation had been violated, it might consider that as [some] evidence of negligence [in the FELA case].").[2]

For all of these reasons, the Court rejects Defendants' argument that any discussion of OSHA regulations should be precluded as irrelevant under Fed. R. Evid. 401: rather, OSHA regulations are generally admissible as some evidence of the applicable standard of care.

### 2.      Unfair Prejudice

Turning to the issue of unfair prejudice, the Federal Rules of Evidence provide that "[a]ll relevant evidence is admissible, except as otherwise provided by . . . these rules."  Fed. R. Evid. 402.  One of the rules that excludes relevant evidence under certain circumstances is Fed. R. Evid. 403, which provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of  unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless

---

[2]      *See also Miller v. Chicago & N. W. Transp. Co.*, 925 F. Supp. 583, 587-88 (N.D. Ill. 1996) ("[S]ome courts have allowed OSHA regulations to be admissible as evidence of the standard of care in an FELA case even when there is no question that the OSHA regulations were not applicable as such. . . .   Hence [Plaintiff's expert] will be allowed to use OSHA's standards as part of the basis for his opinion as to what a reasonable person [in the defendant's situation] would do . . . ."), *accord, Williams v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 00-CV-2250, 2002 WL 1433724, at *5 (N.D. Ill. June. 28, 2002); *Manes v. Metro-North Commuter R.R.*, 801 F. Supp 954, 964 (D. Conn. 1992)(finding proper a jury instruction that stated, "If you find [Defendants] violated certain regulations of . . . OSHA this does not necessarily make the railroad negligent as a matter of law, or negligent per se.  You may, however, consider a violation of OSHA regulations requiring safety nets and handrails as [some] evidence of negligence in deciding whether the railroad acted negligently toward the plaintiff.").

presentation of cumulative evidence."  Fed. R. Evid. 403.

OSHA is a lengthy statute.  29 U.S.C. §§ 651-678.  It does not, on its face, specifically govern the railroad industry.  *Id.*  Nor does it give rise to a private cause of action.[3]  Plaintiff brought this action under FELA.  (*See* Dkt. No. 24 ¶¶ 4, 6, 12(a) [Plf.'s Am. Compl., also relying, in minor way, on the Federal Safety Appliance Acts and the Boiler Inspection Acts]; *see also* Dkt. No. 34, Part 1, at 1 [Plf.'s Memo. of Law in Opp. to Defs.' Motion for Summary Judgment].) Under the circumstances, it is clear to the Court that an over-reliance on OSHA standards in this case would create a substantial danger of confusing or misleading the jury into believing that a violation of an OSHA regulation or standard, in and of itself, makes Defendants liable to Plaintiff.  *Cf. Minichello v. U.S. Indus., Inc*., 756 F.2d 26, 29 (6th Cir. 1985) (noting that the introduction of OSHA standards in a products liability case can be problematic because the standards may improperly suggest a basis for liability).[4]

It is presumably for this reason that federal courts that have admitted evidence of OSHA standards in FELA cases have been careful to delineate the bounds of that admissibility.  *See*, *e.g.*, *Robertson v. Burlington N. R.R. Co*., 32 F.3d 408, 410-11 (9th Cir. 1994) ("[E]vidence [of OSHA standards], however, is to be considered only in relation to all other evidence in the case, and a violation of an OSHA regulation is not negligence *per se* [in a FELA case]."); *Ries v.*

---

[3]       *Ries v. Nat'l R.R. Passenger Corp.*, 960 F.2d 1156, 1164 (3d Cir. 1992) ("[S]everal courts of appeals, including this one, have held that OSHA does not create a private cause of action against an employer for a violation.") [collecting cases].

[4]       In addition, the Court finds, based on the numerous motions *in limine* pending before it (only some of which are being granted), that alternative evidentiary avenues exist by which Plaintiff can potentially meet his "slight negligence" burden of proof in this action, thus conferring on the evidence in question "cumulative" or "needless" quality for purposes of Fed. R. Civ. P. 403.

*National R.R. Passenger Corp.*, 960 F.2d 1156, 1164-65 (3d Cir. 1992) ("However, allowing the OSHA violation to constitute negligence *per se* and bar contributory negligence in a FELA suit would be contrary to both the FELA and OSHA."); *Albrecht v. Baltimore & O. R.R.*, 808 F.2d 329, 332 (4th Cir. 1987) (explaining that "a better form of the . . . the [jury] instruction would [have been] to . . . instruct [the jury] that if [it] believed from the evidence that the [specific part of a particular OSHA] regulation had been violated, it might consider that as [only some] evidence of negligence [under FELA]. . . .").[5]

For all these reasons, the Court concludes that Plaintiff may introduce evidence of OSHA regulations or standards as only *some* evidence of the applicable standard of care under FELA. More specifically, Plaintiff may introduce evidence of particular part of a specific OSHA regulation or standard as some evidence that Defendants had notice that specific ergonomic risk factors were closely associated with the development of cumulative trauma disorders to the upper extremity.  (Dkt. No. 93, Part 3, at 1-2 [Plf.'s Opp. Memo. of Law].)  In addition, Plaintiff may introduce evidence of any studies (if such studies exist) conducted by OSHA regarding (1) welding tasks, and the findings of those studies, and/or (2) cumulative trauma disorders to the upper extremity.  (Dkt. No. 76, Part 2, at 8 [Report of Plf.'s Expert, Dr. Robert O. Andres, listing studies].)[6]

---

[5]    *Cf. Miller v. Chicago & N. W. Transp. Co.*, 925 F. Supp. 583, 588 (N.D. Ill. 1996) ("[Plaintiff's expert] may not of course testify that [the defendant] was bound by [OSHA] standards.  Naturally [the defendant] will be allowed to cross examine on the basis, or to offer its own affirmative evidence, that what is called for by OSHA regulations does not represent a reasonable standard of care for open pits in railroad repair facilities (including in that respect the right to show that OSHA itself does not expose railroads to those regulations).").

[6]    If Plaintiff can introduce evidence of such a study, he may introduce evidence of the Rapid Upper Limit Assessment ("RULA") screening method promoted by OSHA, if that

However, Plaintiff may not introduce evidence of OSHA regulations or standards to show that (1) Defendants were bound by OSHA under the circumstances of this case, or (2) Defendants violated those OSHA regulations or standards.  More specifically, Plaintiff may not, as he requests, introduce evidence of OSHA regulations or standards "outlin[ing] the ingredients of a good ergonomics program." (*Id*. at 1.)  Such evidence would create a substantial danger of confusing or misleading the jury into believing that a violation of those OSHA regulations or standards constitutes a *per se* breach of Defendants' duty of care to Plaintiff under FELA.  In addition, Plaintiff may not, as he requests, introduce evidence of OSHA regulations or standards governing "how companies should collect data on cumulative trauma disorder claims." (*Id*.)  Such evidence would create a substantial danger of confusing or misleading the jury into believing that a violation of those OSHA regulations or standards constitutes a *per se* breach of Defendants' duty of care to Plaintiff under FELA.  Finally, Plaintiff may not introduce evidence of OSHA regulations or standards for purpose other than the purpose specifically described in the preceding paragraph.

## B.      Remaining Portions of Defendants' "Omnibus Motion *in Limine*"

### 1.      Purported Congressional Intent Behind Enactment of FELA

Defendants argue that it would be inappropriate for Plaintiff's counsel to discuss before the jury any purported "Congressional intent" regarding FELA.  (Dkt. No. 73, Part 2, at 1-2.)  In response, Plaintiff does not dispute that he may not discuss Congressional intent, but he argues that he must be able to "mention that FELA is a statute enacted by the United States Congress

---

screening method was used in the study.  Otherwise, he may not mention OSHA in connection with that screening method.  (Dkt. No. 76, Part 2, at 7 [Report of Plf.'s Expert, Dr. Robert O. Andres, listing studies].)

one hundred years ago specifically for railroad workers." (Dkt. No. 88)  The Court finds that any minimal probative value of a discussion of FELA's Congressional intent is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, under Fed. R. Evid. 403.  However, the Court also agrees with Plaintiff's counsel that mentioning the FELA statute, and briefly explaining who it applies to, is relevant and not unfairly prejudicial, confusing or misleading.  For these reasons, the Court concludes that Plaintiff is precluded from discussing the Congressional intent of FELA, but is not precluded from briefly explaining to the jury that "FELA is a statute enacted by the United States Congress one hundred years ago specifically for railroad workers."

### 2.      Fact that FELA Is Plaintiff's Sole Remedy

Defendants argue as follows: (1) any remark comparing the FELA to Workers' Compensation Acts, or the facts that Plaintiff was not covered under Workers' Compensation Benefits is impermissible; (2) no reference to lack of Workers' Compensation Benefits available to Plaintiff should be permitted in a FELA case; and (3) Plaintiff should be precluded from informing the jury that Plaintiff's sole remedy in the instant matter is under FELA.  (Dkt. No. 73, Part 2, at 2-3.)

With regard to Defendants' first and second argument, Plaintiff acknowledges that it would be improper for him to introduce at trial any discussion, argument, testimony and/or evidence regarding a comparison between FELA and Workers' Compensation Acts, or the fact that Plaintiff was not covered under workers' compensation benefits.  (Dkt. No. 88, Part 3, at 2.) "Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's

failure to file or serve any papers as required by this Rule shall be deemed as consent to the

granting or denial of the motion, as the case may be, unless good cause be shown."  N.D.N.Y.

L.R. 7.1(b)(3).  Therefore, under the circumstances, the sole issue before the Court is whether

Defendants have met their burden to "demonstrate entitlement" to exclusion of the evidence in

question.[7]  An inquiry into whether a movant has met its "burden to demonstrate entitlement" to

the relief requested under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a

contested motion.[8]  This is because, as a practical matter, the burden requires only that the

movant present an argument that is "facially meritorious."[9]  Here, the Court finds that

---

[7]      *See also* Fed. R. Civ. P. 7(b)(1) (requiring motions to, *inter alia*, "state with
particularity the grounds therefor").

[8]      *See, e.g., Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y.
Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a
motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-
324 (1986)]; *accord, Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60
(N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v.
Woods*, 03-CV-0480, 2006 WL 1133247, at *17 & n.109 (N.D.N.Y. Apr. 24, 2006) (Hurd, J.,
adopting Report-Recommendation of Lowe, M.J.); *see also Race Safe Sys. v. Indy Racing
League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing merely
whether record contradicted defendant's arguments, and whether record supported plaintiff's
claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*,
96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.)
(applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's
failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers)*,
adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord*,
*Carter v. Superintendent Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y.
Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[9]      *See, e.g., Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8
(N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under
Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially
meritorious*") [emphasis added; citations omitted]; *accord, Topliff v. Wal-Mart Stores East LP*,
04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe,
M.J.); *Hynes v. Kirkpatrick*, 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n.2
(N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS
26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist.

Defendants have met their lightened burden on their unopposed motion for the reasons stated in their motion papers.  For these reasons, the Court concludes that Plaintiff is precluded from introducing any testimony or evidence (1) comparing the FELA to Workers' Compensation Acts, or the facts that Plaintiff was not covered under Workers' Compensation Benefits, or (2) suggesting that Workers' Compensation Benefits are not available to Plaintiff in the instant case.

With regard to Defendants' third argument (i.e., regarding the introduction of the fact that Plaintiff's sole remedy in the instant matter is under FELA), Plaintiff argues that he should be entitled to inform the jury of this because most jurors are unable to sue their employers, and therefore may not understand why Plaintiff is able to sue Defendants in this case.  (Dkt. No. 88, Part 3, at 2.)  While the Court agrees that some explanation to the jury regarding FELA is appropriate, the Court finds that allowing Plaintiff to inform the jury that FELA is his sole remedy is a round about way of telling the jury that Plaintiff is ineligible to receive worker's compensation.[10]  In addition, for the same reason that it would be prejudicial to Plaintiff to allow Defendants to inform the jury about Railroad Retirement Board disability benefits, it would be prejudicial to allow Plaintiff to inform the jury that FELA is Plaintiff's sole remedy.[11]  For these

LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

[10]  *See, e.g., Baethke v. Ne. Ill. Reg'l Commuter R.R.*, 97-CV-7882, 1999 WL 1144917, at *2-3 (N.D. Ill. Dec. 9, 1999) (precluding plaintiff from offering evidence that his sole remedy is under FELA because "ineligibility for workers compensation is irrelevant to the central issue of whether the defendant violated the provisions of FELA."); *see also Stillman v. Norfolk & Western Ry.*, 811 F.2d 834, 838 (4th Cir. 1982) (finding plaintiff's argument that he should be allowed to inform the jury that recovery under the FELA was his only possible remedy unpersuasive because such evidence is both irrelevant an prejudicial to the railroad.)

[11]  *Stillman*, 811 F.2d at 838.

reasons, the Court concludes that Plaintiff is precluded from explaining to the jury that FELA is his sole remedy.

### 3.    Existence of Other Claims or Suits Against Defendants

Defendants argue that evidence of other claims or lawsuits brought against Defendants is irrelevant under Fed. R. Evid. 401, and unfair prejudicial under Fed. R. Evid. 403.  (Dkt. No. 73, ¶ J.)  In his response, Plaintiff asserts that "testimony of similar prior lawsuits against Defendants is evidence of actual notice, which is highly relevant to the notice and foreseeability aspect of an FELA claim." (Dkt. No. 88, ¶ D.)

Generally, evidence of prior lawsuits or claims against Defendants is relevant in that it demonstrates that Defendants were on notice that exposing employees to certain conditions, appliances and/or work environments may cause injuries.[12]  However, the Court finds that, in order to avoid unfairly prejudicing Defendants, and/or confusing or misleading the jury, the prior lawsuits or claims that Plaintiff seeks to introduce must be sufficiently similar to the claims that Plaintiff is bringing in the instant matter.

For these reasons, Plaintiff may only introduce prior claims or lawsuits brought against one or both of the Defendants by welders who suffered a cumulative trauma disorder to their upper extremity.  In addition, to avoid unfair prejudice to Defendants, and confusing or

---

[12]    *See, e.g., Baethke v. Ne Ill. Reg'l Commuter R.R.*, 97-CV-7882, 1999 WL 1144917, at *3 (N.D. Ill. Dec. 9, 1999) (denying defendant's motion to preclude plaintiff from offering evidence of other claims or injuries, as such "evidence of prior similar accidents and injuries may be relevant because it may demonstrate notice to the defendant of dangerous conditions."); *see also First Sec. Bank v. Union Pacific R.R. Co.*, 152 F.3d 877, 879 (8th Cir. 1998) (finding that "evidence of prior accidents may be admissible to prove notice on the part of a defendant," but limiting the evidence to "any such accidents . . . sufficiently similar in time, place or circumstances . . . ." [citations and internal quotations omitted].)

misleading the jury, the Court will limit the number of such lawsuits or claims to three (3).

**4.     Whether Defendants Could Have Employed a Safer Method of
Maintaining Plaintiff's Workplace**

Defendants argue that, because their duty was to use reasonable care to ensure that the

workplace and appliances were reasonably safe for the purpose and circumstances in which they

are used, any inquiry as to whether they could have employed a safer method of maintaining the

workplace is irrelevant under Fed. R. Evid. 401.  (Dkt. No. 73, Part 2, at 11-13.)  In a response

that largely ignores Defendants' argument, Plaintiff argues that, through both Dr. Andres and

various governmental publications, he plans to demonstrate Defendants' failure to implement a

timely and adequate ergonomic program.  (Dkt. No. 88, Part 3, at 3-4 [Plf.'s Opp. Memo. of

Law].)[13]

Under FELA, "[t]he extent of the employer's duty is to exercise ordinary care under the

circumstances to see that the place in which the work is performed is reasonably safe . . . ."

*Wynne v. Consol. Rail Corp.*, 87-CV-8219, 1990 WL 1218, at *2 (S.D.N.Y. Jan. 2, 1990).   The

Court finds that Defendants do not have a duty under FELA to provide employees with the latest,

best and safest appliances.  However, since FELA requires that Plaintiff prove that Defendants'

failed to provide him with a safe place to work, the issue of whether or not Defendants could

have employed a safer method of maintaining the workplace could be relevant to the issue of

reasonable care.  *See, e.g., Cook v. CSX Transp., Inc*., 06-CV-1193, 2008 WL 2275544, at *3

---

[13]      Specifically, Plaintiff argues that the inadequacies are a result of the following:
(1) a failure to perform worksite analyses; (2) a failure to provide Plaintiff with personal
protective equipment; (3) a failure to educate Plaintiff regarding the risks of cumulative trauma
disorders to the upper extremity; and (4) a failure to perform medical management.  (Dkt. No.
88, Part 3, at 3.)

(M.D. Fla. June 2, 2008) ("Evidence of safer alternative methods for performing Plaintiff's work could be relevant to the issue of reasonable care.") [citation omitted].[14]

Having said that, Fed. R. Evid. 403 must be considered. Evidence that Defendants could have employed a safer method of maintaining Plaintiff's workplace carries an implication that Defendants were under a *per se* legal duty to Plaintiff under FELA to employ such a safer method. Such evidence also carries an implication that all such methods were reasonable or feasible–a fact that Dr. Andres did not establish to the Court's satisfaction in either his expert report or the *Daubert* hearing that occurred in this action on January 5, 2009. Finally, such evidence suggests that Defendants did not, in fact, employ a safer method of maintaining *Plaintiff's* particular workplace during the relevant time period–a fact of which Dr. Andres has no personal knowledge. As a result, the Court finds that such evidence carries a substantial danger of unfair prejudice to Defendants, confusion of the issues, and/or misleading the jury.

For all of these reasons, the Court concludes that Plaintiff may generally introduce evidence that Defendants could have employed a safer method of maintaining Plaintiff's workplace on two conditions: (1) that evidence does not imply that Defendants were under a *per se* legal duty to Plaintiff under FELA to employ such a safer method; and (2) if the evidence consists of the testimony of Dr. Andres, that evidence must comply with Part III of this Court's separate Decision and Order of January 6, 2009, regarding the admissibility of his expert testimony. For example, pursuant to that Decision and Order, it would be permissible for Dr. Andres to offer testimony consistent with the following (if appropriate): (1) "Generally, to

---

[14]     *See also Churchwell v. Bluegrass Marine, Inc*., 444 F.3d 898, 905 (6th Cir. 2006) ("Proof that a safer alternative existed makes it 'more probable' that Defendants failed to exercise reasonable care . . . .").

mitigate the effects of certain ergonomic risk factors for the upper extremity to which welders
are exposed, it is recommended by [state by whom (e.g., OSHA, the FRA, the AAR, and/or me
in my expert opinion)] that a company take the following action: [describe action])"; and (2)
"Based on the materials I have seen, it appears to me that, during the relevant time period,
Defendants generally did not take such action in the following regard: [describe]."[15]

### C. Defendants' Motion to Exclude Evidence that They Lacked an Ergonomics Program and/or Medical Surveillance Program

In support of their third motion *in limine*, Defendants argue that, because Plaintiff's
ergonomic expert is not a medical expert, he may not provide an opinion that Defendants lacked
an ergonomic program and/or medical surveillance program, and that the lack of such a program
caused Plaintiff's injuries.  (Dkt. No. 75.)  In addition, Defendants argue that none of Plaintiff's
treating physicians have given opinions supporting the conclusion that Defendants lacked an
ergonomic program and/or medical surveillance program, and that the lack of such a program
caused Plaintiff's injuries.  (*Id*. at Part 1, ¶ 3.)  Finally, Defendants argue that whether or not they
lacked an ergonomic and/or medical surveillance program is irrelevant, because there is no
evidence that an ergonomic and/or medical surveillance program would have prevented
Plaintiff's injuries.  (*Id*. at Part 1, ¶ 3.)  In response, Plaintiff argues that the "heart of Plaintiff's
case" is that Defendants failed "to employ a timely and adequate ergonomic program to prevent
repetitive stress injuries to the upper extremities," which Dr. Andres makes clear in his expert
ergonomic report.  (Dkt. No. 92, ¶ 1.)[16]

---

[15]     "AAR" standards for the Association of American Railroads.

[16]     The Court notes that the assertions that Defendants seek to preclude–i.e., that
Defendants lacked an ergonomic program and/or medical surveillance program–are essentially

Under the circumstances, it would appear that the sole relevance of an allegation or piece of evidence that Defendants lacked an ergonomic program and/or medical surveillance program depends on the introduction of evidence that, during or before the relevant time period, it was advisable that a company have such an ergonomics program and/or medical surveillance program in order to mitigate the effects of certain ergonomic risk factors for cumulative trauma disorders to the upper extremity.  Absent the introduction of evidence that Defendants should have had such a program, evidence that Defendants lacked such a program is of little (if any) relevance, and has a strong potential to confuse and mislead the jury, for purposes of Fed. R. Evid. 403 (by encroaching on its role as the finder of whether Defendants breached their legal duty to Plaintiff). *See Graham*, 2008 WL 4418930, at *1 (linking the relevance of expert testimony regarding Defendant's failure to maintain an ergonomics program with evidence that Defendants should have had such a program).

For all of these reasons, the Court concludes that Plaintiff may generally introduce such evidence on two conditions: (1) the introduction of that evidence is preceded, or accompanied, by the introduction of evidence that, during or before the relevant time period,  it was recommended that a company have such an ergonomics program and/or medical surveillance program in order to mitigate the effects of certain ergonomic risk factors for cumulative trauma disorders to the upper extremity; and (2) if the evidence consists of the testimony of Dr. Andres, that evidence must comply with Part III of this Court's separate Decision and Order of January 6, 2009, regarding the admissibility of his expert testimony.  For example, pursuant that Decision

---

"Conclusion / Opinion 13" and "Conclusion / Opinion 14" offered by Dr. Andres in his expert report.

17

and Order, it would be permissible for Dr. Andres to offer testimony consistent with the

following (if appropriate): (1) "Generally, to prevent cumulative trauma disorders to the upper

extremity, it is recommended by [state by whom (e.g., OSHA, the FRA, the AAR, and/or me in

my expert opinion)] that a company have the following ergonomics program or medical

management program: [describe]"; and (2) "Based on the materials I have seen, it appears to me

that, during the relevant time period, Defendants generally did not have such a program in the

following regard: [describe]."

      **ACCORDINGLY**, it is

      **ORDERED** that Defendants' motion to exclude evidence regarding OSHA standards or

alleged violations of OSHA standards (Dkt. No. 71) is **<u>GRANTED</u>** in part and **<u>DENIED</u>** in part,

in that (1) Plaintiff may introduce evidence of particular part of a specific OSHA regulation or

standard as some evidence that Defendants had notice that specific ergonomic risk factors were

closely associated with the development of cumulative trauma disorders to the upper extremity,

(2) Plaintiff may introduce evidence of any studies (if such studies exist) conducted by OSHA

regarding (a) welding tasks, and the findings of those studies, and/or (b) cumulative trauma

disorders  to the upper extremity, (3) if Plaintiff can introduce evidence of such a study, he may

introduce evidence of the RULA screening method promoted by OSHA, if that screening method

was used in the study, and (4) Plaintiff may not introduce evidence of OSHA regulations or

standards for any other purpose; and it is further

      **ORDERED** that Defendants' motion to preclude Plaintiff from introducing at trial any

discussion, argument, testimony and/or evidence regarding any purported Congressional intent

behind the enactment of FELA (Dkt. No.73, Part 2, at 1-2) is **<u>GRANTED</u>** in part and **<u>DENIED</u>**

in part, in that Plaintiff is precluded from discussing Congressional intent, but is not precluded from briefly explaining to the jury in Counsel's opening statement that FELA is a statute enacted by the United States Congress one hundred years ago specifically for railroad workers; and it is further

**ORDERED** that Defendants' motion to preclude Plaintiff from introducing at trial any discussion, argument, testimony and/or evidence regarding a comparison between FELA and any workers' compensation acts, the fact that Plaintiff was not covered under workers' compensation benefits, or the fact that Plaintiff's sole remedy is under FELA (Dkt. No. 73, Part 2, at 2-4) is **GRANTED**; and it is further

**ORDERED** that Defendants' motion to preclude Plaintiff from introducing at trial any discussion, argument, testimony and/or evidence regarding any other claims or lawsuits against Defendants (Dkt. No. 73, Part 2, at 10-11) is **GRANTED** in part and **DENIED** in part, in that (1) Plaintiff may only introduce prior claims or lawsuits brought against one or both of the Defendants by welders who suffered a cumulative trauma disorder to their upper extremity, and (2) the number of such lawsuits or claims is limited to three (3); and it is further

**ORDERED** that Defendants' motion to preclude Plaintiff from introducing at trial any discussion, argument, testimony and/or evidence regarding whether Defendants could have employed a safer method of maintaining Plaintiff's workplace (Dkt. No. 73, Part 2, at 11-13) is **GRANTED** in part and **DENIED** in part, as described above in Part II.B.4. of this Decision and Order; and it is further

**ORDERED** that Defendants' motion to preclude Plaintiff from introducing evidence that Defendants lacked an ergonomic program and/or medical surveillance program (Dkt. No. 75) is

**GRANTED** in part and **DENIED** in part, as described above in Part III of this Decision and

Order.

Dated: January 6, 2009
     Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge